**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 08a0553n.06
Filed: September 9, 2008
No. 07-5159

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff, Appellee*

On Appeal from the United States District
Court for the Eastern District of Kentucky

v.

DONALD R. MARTIN,
*Defendant, Appellant*

_____/


**BEFORE: KENNEDY, GILMAN, and GIBBONS, Circuit Judges.**

**KENNEDY, Circuit Judge.** Defendant Donald R. Martin challenges the procedural reasonableness of his sentence of 360 months of imprisonment for production of child pornography and 120 months of imprisonment for possession of child pornography, to be served concurrently. Martin argues that the district court erred in calculating his advisory United States Sentencing Guidelines ("USSG") range by (1) applying the two-level enhancement under USSG § 2G2.1(b)(5) because the child victims were in his care, custody, or supervisory control; (2) applying the two-level adjustment under USSG § 3B1.4 because he used a minor to commit the crime; and (3) improperly "grouping" the counts under USSG § 3D1.2. Though we find that the enhancement and adjustment were properly applied, because we find that the district court erred by failing to properly group closely related counts under USSG § 3D1.2 before calculating Martin's combined adjusted offense level, resulting in a significantly higher recommended Guidelines range, we **REVERSE** the judgment of the district court and **REMAND** the case for resentencing consistent with this opinion.

**BACKGROUND**

Defendant Donald R. Martin owned and operated Southern Stars, a business offering modeling courses, instruction, and photography services. Martin used this business to produce child pornography. He desensitized his child victims by showing them nude images and telling them that posing nude was required of those who wanted to succeed in the modeling industry. He sometimes asked them to pose in manners similar to those shown in the nude images.

Juvenile One ("J1"), Juvenile Two ("J2"), and Juvenile Three ("J3"), all girls under the age of thirteen at the time of the offense, were Martin's primary victims. These children were often dropped off at Martin's studio and left in his custody for four to six hours per session. The children, and their parents, believed that they were to receive proper modeling instruction and photography services. Instead, Martin repeatedly dressed the girls in see-through clothing, instructed them to remove their underwear, and gave them specific commands on how to pose and lift their clothing to ensure that the camera captured their exposed genital areas.

Police began investigating Martin after J1 and J2 informed their school counselor that they had been photographed in the nude. They recovered a memory card from Martin's camera containing seven images of eleven-year-old J3 engaged in the lewd or lascivious exhibition of her genitalia. Police also found approximately 200 images of child pornography on a computer and electronic storage discs in Martin's home.

In interviews with police, twelve-year-old J1 and thirteen-year-old J2 revealed that Martin had instructed them to take pornographic photos of one another. During the photo session, Martin asked J2 to operate the camera while he directed J1 to take off her underwear and lift the see-through

2

skirt she was wearing to expose her genitals to the camera.  Martin then had the girls switch roles, and instructed J1 to take photos of J2 exposing her genitalia to the camera as he directed.

On May 25, 2006, a grand jury indicted Martin on three counts of production of child pornography in violation of 18 U.S.C. § 2251(a), two counts of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of forfeiture of assets under 18 U.S.C. § 2253. On August 29, 2006, Martin, absent a plea agreement, pleaded guilty to a three-count information charging him with one count of production of child pornography, one count of possession of child pornography, and one count of forfeiture.

The United States Probation Officer conducted a presentence investigation and submitted a Presentence Report ("PSR") to the court.  The PSR applied the 2006 Edition of the Sentencing Guidelines Manual to calculate a total offense level of 41 and a criminal history category of I.  The PSR recommended a Guidelines imprisonment range of 324 to 405 months.  The PSR included specific offense characteristic enhancements to the base offense levels because (1) the offenses involved a minor who had not attained the age of twelve[1] and two minors who had attained the age of twelve but had not attained the age of sixteen,[2] (2) the minors were in the custody, care, or supervisory control of Martin at the time of the offenses,[3] and (3) Martin used a minor to commit the offenses.[4]

---

[1] USSG § 2G2.1(b)(1)(A).

[2] USSG § 2G2.1(b)(1)(B).

[3] USSG § 2G2.1(b)(5).

[4] USSG § 3B1.4.

During a sentencing hearing on February 5, 2007, Martin objected to the enhancements based on the fact that the child victims were in his custody, care, or supervisory control and he used a minor in committing the offenses. Martin also objected to the "grouping" used by the district court in calculating his adjusted offense level. After reviewing the evidence, the district court made findings consistent with the PSR. The district court considered the sentencing factors in 18 U.S.C. § 3553(a) and ultimately sentenced Martin to 360 months of imprisonment for production of child pornography and 120 months of imprisonment for possession of child pornography, to run concurrently. This timely appeal followed.

## ANALYSIS

When considering sentencing decisions, we review the district court's factual findings for clear error while reviewing the district court's conclusions of law *de novo*. *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005). We review the district court's application of the Guidelines *de novo*. *United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005). Generally, a sentence is procedurally unreasonable, and a remand will be warranted, when the district court committed an error in computing the Guidelines' recommended sentencing range. *See Gall v. United States*, 552 U.S. __, 128 S.Ct. 586, 596 (2007); *Hazelwood*, 398 F.3d at 801. A remand will not be required, and a sentencing error deemed harmless, however, when "we are certain that . . . any such error 'did not affect the district court's selection of the sentence imposed.'" *Hazelwood*, 398 F.3d at 801 (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).

## I.

First, Martin challenges the district court's application of USSG § 2G2.1(b)(5) to increase his offense level by two levels. Martin argues that the minor victims were not "otherwise in [his]

4

custody, care, or supervisory control" because his relationship to them as their modeling instructor/photographer is unlike that of teachers, day care providers, baby-sitters, or other temporary caretakers listed in Application Note 3 of the Commentary as examples of those subject to the enhancement. However, as noted by the district court in finding the enhancement applicable, Application Note 3 also states that "[s]ubsection (b)(5) is intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently." Application Note 3 further instructs that "the court should look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship."

The district court found that Martin's actual relationship to the minor victims "did involve entrustment by the parents" and Martin "clearly used his position as the photographer, holding himself out as assisting these young ladies in hopefully becoming models at some point in order to violate the trust that was given to him." The record reflects that the girls were dropped off at Martin's studio and left under his instruction for four to six hours at a time. Accordingly, we find that the district court properly applied the two-level increase here because the minor victims were exploited while under the supervisory control of Martin, their modeling instructor/photographer.

**II.**

Second, Martin argues that the district court erred in applying the two-level adjustment under USSG § 3B1.4 for using a minor to commit the offense. Martin asserts that application of the adjustment results in impermissible double-counting as the underlying offense guideline already incorporates the "use of a minor" factor. *See* U.S.S.G. § 3B1.4, cmt. n.2. We disagree.

5

The district court found that Martin used a minor to commit the offenses by instructing J1 and J2 to take pornographic photos of one another.[5] While USSG § 2G2.1 incorporates the age of the victim (i.e. the child depicted in the pornographic photos), it does not account for Martin's utilization of a second child to take the photos. The district court properly framed the application of USSG § 3B1.4 for Martin's use of the child to operate the camera, and not for his victimization of the child appearing in the pornographic photos. Thus, we find that the district court did not engage in impermissible double-counting by applying the two-level adjustment for use of a minor in committing the offense.

**III.**

Finally, Martin challenges the district court's "grouping" of the counts under USSG § 3D1.2. In his brief, Martin argues that the district court erred by grouping the relevant conduct as production of child pornography rather than possession of child pornography, resulting in a higher combined adjusted offense level. We find his argument vague and confusing because the district court performed the multi-count adjustment under USSG § 3D1.4 without actually grouping any counts together under USSG § 3D1.2. Upon reviewing the record, however, we find that the district court erred in failing to do so.

The government characterizes Martin's grouping argument as contesting the creation of pseudo-counts of conviction under the special instruction in USSG § 2G2.1(d)(1) and the utilization

_____

[5]Martin argues that the district court cannot rely on the fact that Martin instructed J1 and J2 to take pornographic photos of one another to apply the adjustment since the offense conduct alleged in the indictment to which Martin pleaded guilty involved only J3, and J1 and J2 did not participate in the production of J3's photos. This argument is without merit. The district court properly considered Martin's actions in using J1 and J2 to take pornographic photos of one another as relevant conduct for purposes of adjusting his offense level. *See* U.S.S.G. § 1B1.3(a).

of the cross-reference found at USSG § 2G2.2(c)(1), and asserts that Martin has waived any USSG § 3D1.2 grouping issue by not developing an intelligible argument. *See* Appellee's Br. at 11-15. We find, however, that Martin has sufficiently raised this issue for appellate review. Rather than adverting to the grouping issue in a perfunctory manner, *see United States v. Keller*, 498 F.3d 316, 326 (6th Cir. 2007), Martin made some effort at developed argumentation by citing USSG § 3D1.2 and asserting that the counts should have been grouped under the possession count.[6] Despite the fact that the substance of the grouping arguments made in his brief are confusing at best, and contradictory at worst, we find that Martin sufficiently raised the issue. Moreover, in its supplemental letter brief, the Government concedes that it and the district court failed to notice certain inaccuracies in the PSR's computations pertaining to the grouping principles. Therefore, we will examine the district court's Guidelines calculations and its failure to group closely related counts under USSG § 3D1.2.

Here, Martin pleaded guilty to one count of production of child pornography (J3) and one count of possession of child pornography (seven images of J3 and numerous images of unidentifiable minors). Based on its findings of fact and relevant conduct determinations, the district court found that Count One (production) involved the exploitation of more than one minor, and properly created pseudo-counts pursuant to USSG § 2G2.1(d)(1) based on the production conduct relating to J1 and J2 to reflect the true seriousness of Martin's actions.[7] The district court then properly calculated the

---

[6]We note, though, that defense counsel appears confused by his own argument because he states in his brief that "[Martin] does not concede the applicability of grouping at all." Appellant's Br. at 19.

[7]Section 2G2.1(d)(1) instructs, "If the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction."

adjusted offense level of the production count (J3) and each production pseudo-count (J1 and J2) as 38.[8]

As to Count Two (possession), the district court properly applied the cross-reference of USSG § 2G2.2(c)(1)[9] to calculate the offense under the production guideline (USSG § 2G2.1), rather than the possession guideline (USSG § 2G2.2). However, as conceded by the Government in its supplemental letter brief, the district court failed to apply the production guideline in its entirety – namely the special instruction found at USSG § 2G2.1(d)(1) to create pseudo-counts for the two additional child victims (J1 and J2). *See* U.S.S.G. § 1B1.5(a) ("A cross-reference (an instruction to apply another offense guideline) refers to the entire offense guideline (i.e., the base offense level, specific offense characteristics, cross-references, and special instructions)."). By failing to create pseudo-counts for the possession offense pursuant to the cross-referenced special instruction, the district court incorrectly incorporated a four-level specific offense characteristic applicable only to eleven-year-old J3 and a two-level adjustment applicable only to J1 and J2 into one improperly melded computation with an adjusted offense level of 40.[10]

---

[8]Each carried a base offense level of 32. The calculation for eleven-year-old J3 included a four-level age increase under USSG § 2G2.1(b)(1)(A) and a two-level "custody, care, or supervisory control increase" under USSG § 2G2.1(b)(5). The calculation for twelve-year-old J1 was the same as that of thirteen-year-old J2, with each including a two-level age increase under USSG § 2G2.1(b)(1)(B), a two-level increase for "custody, care, or supervisory control" under USSG § 2G2.1(b)(5), and a two-level adjustment under USSG § 3B1.4 for "use of a minor."

[9]"If the offense involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply § 2G2.1 . . . if the resulting offense level is greater than that determined [by application of § 2G2.2]."

[10]The four-level increase for a minor "who had not attained the age of twelve years" under USSG § 2G2.1(b)(1)(A) applies to eleven-year-old J3 only; a two-level increase under USSG § 2G2.1(b)(1)(B) would apply to twelve-year-old J1 and thirteen-year-old J2. Similarly, the two-level "use of a minor to commit a crime" adjustment under USSG § 3B1.4 only applies to J1 and J2, who

8

Had the possession offense conduct involving these three child victims been separately represented in three distinct calculations, as required by USSG § 2G2.1(d)(1), each would have resulted in an adjusted offense level of 38, not 40. *See supra* note 8 and accompanying text. Essentially, as stated by the Government in its supplemental letter brief, once Count Two was cross-referenced from the possession guideline to the production guideline, the computations generated by the possession conduct on Count Two should have been identical to those generated by the production conduct on Count One (i.e., there should have been one formal count of conviction with an adjusted offense level of 38 (J3) and two pseudo-counts each with adjusted offense levels of 38 (J1 and J2)). Thus, if properly calculated, the net result would be six distinct counts (two formally charged counts and four pseudo-counts), each with an adjusted offense level of 38:

Count One (J1) = 38

Count One (J2) = 38

Count One (J3) = 38

Count Two (J1) = 38

Count Two (J2) = 38

Count Two (J3) = 38.[11]

were directed by Martin to take photos of each other, but does not apply to J3, who was photographed by Martin himself.

[11]To the extent that Count Two encompassed the numerous images of unidentifiable minors engaging in sexually explicit conduct found in Martin's possession, we note that the cross-reference of USSG § 2G2.2(c)(1) would not apply to these additional images of child pornography because Martin did not produce them. Therefore, his base level offense for possession of these images would be 18. *See* U.S.S.G. § 2G2.2(a)(1). The district court did not make any findings on whether any specific offense characteristics should apply to these images (such as increases for use of a computer under subsection (b)(6) or for the number of images under subsection (b)(7)). In any event, this conduct would not be grouped together with any other count, and as a stand-alone Group would be

The district court exacerbated its error in failing to create pseudo-counts for the possession offense by failing to group any of the counts together under USSG § 3D1.2 before calculating Martin's combined adjusted offense level. Section 3D1.2 instructs that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." Grouping is designed "to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct." USSG, ch. 3, pt. D, introductory cmt. Thus, "[c]onvictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines." *Id*.

In the present case, the prosecutor chose to charge Martin with one count of production of child pornography and one count of possession for the images he had produced. But every image of child pornography that is produced by a defendant will necessarily also be possessed by the defendant. Therefore, to carry out the objective of preventing multiple punishment for substantially identical offense conduct, when a production "count[] involve[s] the *same* victim and the *same* act or transaction" as a possession count (i.e. the defendant is being charged with possessing the images that he produced), they must be grouped together under § 3D1.2(a).[12]

disregarded in the ultimate combined offense level calculation because it would be more than 9 levels less serious than the Group with the highest offense level. *See* U.S.S.G. §§ 3D1.2, 3D1.4(c).

[12]We note that although the Eighth Circuit appears to read the specific exclusion of USSG § 2G2.1 offenses from grouping under USSG § 3D1.2(d) as excluding those offenses from grouping entirely, *see, e.g.*, *United States v. Kiel*, 454 F.3d 819, 822 (8th Cir. 2006), as the Government acknowledges in its supplemental letter brief, subsection (d) excludes USSG § 2G2.1 offenses from grouping under that subsection only. *See* U.S.S.G. § 3D1.2(d) ("Exclusion of an offense from grouping under *this* subsection does not necessarily preclude grouping under *another* subsection.") (emphasis added); *see also United States v. Tank*, 200 F.3d 627, 633-34 (9th Cir. 2000). Thus, USSG § 2G2.1 offenses may still be grouped by operation of subsections (a), (b), or (c) of USSG § 3D1.2, if applicable.

Furthermore, while Application Note 5 of the Commentary to USSG § 2G2.1 provides that,

10

Here, the identifiable minors depicted in the images that Martin produced are the victims of his production offenses as well as the victims of his possession offenses. *See United States v. Hibbler*, 159 F.3d 233, 236-37 (6th Cir. 1998) (holding children depicted in pornographic images are the primary victims of the crime of possession). Also, the production of the images of each victim and the possession of the images of each victim can be properly characterized as the same act or transaction. Martin's physical act of taking the photographs simultaneously satisfied the criminal ends of production and possession of child pornography. The instant that Martin produced the images by operating his camera, he also possessed the images on his camera; even if Martin immediately deleted the images he produced – for that moment – he was in possession of the pornographic images. Therefore, the separate counts of production and possession related to each child victim should have been grouped together as they "involve the same victim and the same act or transaction" and thus consist of "substantially the same harm." U.S.S.G. § 3D1.2(a).

Section § 3D1.2(a) operates to create three Groups:

Group 1: Count One (J1) + Count Two (J1) = 38

Group 2: Count One (J2) + Count Two (J2) = 38

Group 3: Count One (J3) + Count Two (J3) = 38.

---

"multiple counts involving the exploitation of *different* minors are not to be grouped *together* under § 3D1.2" (emphasis added), it does not forbid the grouping of production counts with different minor victims under § 3D1.2 altogether (i.e., with any other closely related count). In fact, where multiple counts involve the same minor victim, they expressly should be considered for grouping pursuant to USSG § 3D1.2(a) or (b).

Thus, production counts are still subject to the mandatory grouping of closely related counts under § 3D1.2, but with the caveat that production counts with different minor victims cannot be grouped together and production counts cannot be grouped under subsection (d) of § 3D1.2 at all.

Section 3D1.4 then operates to determine the combined offense level of the Groups. Groups 1, 2, and 3 each add one unit, for a three-level increase to the greater adjusted offense level of 38. Thus, Martin's combined adjusted offense level is 41. After a reduction of three-levels for Martin's acceptance of responsibility under § 3E1.1, Martin's resulting total offense level is 38, rather than the level 41 calculated at sentencing. With a Criminal History Category I, Martin's recommended advisory Guidelines range would be 235 to 293 months imprisonment, instead of 324 to 405 months imprisonment, as erroneously computed by the district court.

We conclude that the district court's failure to group Martin's closely related counts under USSG § 3D1.2 was prejudicial procedural error. Though the district court stated that a lengthy sentence was needed in Martin's case to protect the public, the district court also indicated that carrying out the Guidelines' purpose of avoiding unwarranted sentencing disparities among similarly situated defendants influenced its decision to impose a sentence in the middle of the incorrectly calculated Guidelines range. We cannot be certain that the district court's error did not affect its selection of the sentence imposed.

## CONCLUSION

For the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for resentencing consistent with this opinion.